IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRENTON HOLLINGER,
      Plaintiff,

vs.                                                    3:05cv13/LAC/MD

INTERNATIONAL PAPER COMPANY and
WASAU BENEFITS, INC.
      Defendant.

---

## AMENDED REPORT AND RECOMMENDATION[1]

This cause is before the court upon defendants' motion for summary judgment (doc. 25) and plaintiff's response to defendants' statement of undisputed material facts. (Doc. 29).

Procedural Background

Plaintiff Brenton J. Hollinger initially filed this case in the Circuit Court of Escambia County Florida in December of 2004[2] against International Paper Company ("IP") and Wausau Benefits, Inc. ("Wausau"), the claims administrator for IP. In the complaint, plaintiff alleges a wrongful denial of disability benefits that he is entitled to under IP's Salaried Leave of Absence or Salary Continuance Plan[3] ("SCP") and Long Term Disability

---

[1] Corrected to reflect omission of the first line of the "Procedural Background" section.

[2] A copy of the complaint, without the referenced exhibits to the complaint, is appended as part of exhibit A to the notice of removal. (Doc. 1).

[3] In the complaint, plaintiff refers to the plan as the "Salaried Leave of Absence FMLA," and refers to a document attached as exhibit A. As noted above, the exhibits to plaintiff's complaint were not included with the defendants' notice of removal. The defendants refer to Salary Continuance Plan benefits, and that label will be used herein.

("LTD") plan. In paragraph 5 of the complaint plaintiff contends that on November 14, 2003 he became ill with a sickness described in an (unattached) exhibit, and that he has been disabled from either that date or December 4, 2003. He states that he filed notice and proof of disability with the defendant on the prescribed forms and has performed all conditions required of him pursuant to the insurance policy at issue. Plaintiff claims that beginning on December 4, 2003 he was entitled to receive $6,500.00 per month for 6 months (22 weeks) and $3,995.00 per month thereafter for the time he remains disabled. Defendants apparently paid some benefits, but refused to pay $6,500.00 for the month of May, 2004 or the $3,995.00 per month due to plaintiff thereafter. He also seeks long term disability payments.

The parties attempted to resolve this dispute through mediation and reached a tentative settlement. (Doc. 20). When the settlement was not consummated, the plaintiff filed a motion to reinstate the case (doc. 22), which was granted. (Doc. 24). The defendants filed the instant motion for summary judgment soon thereafter.

In their motion, defendants contend that they are entitled to summary judgment on plaintiff's claim for SCP benefits because plaintiff failed to establish that he was unable to perform his job. They claim entitlement to summary judgment on plaintiff's claim for LTD benefits, the $3,995.00 monthly benefits, because (1) plaintiff failed to exhaust Salary Continuance benefits, a condition prerequisite to LTD benefits; (2) he failed to exhaust his administrative remedies; and (3) his claim is time barred.

Undisputed Facts

Plaintiff began working for IP's Pensacola Mill on December 8, 1980 as a production assistant and received various promotions until earning the position of Maintenance Supervisor on May 4, 1998, which was the last position he held with IP when he ceased working on or about December 4, 2003. Plaintiff was diagnosed with diabetes in 1982, hypertension in the mid-1990's and HIV (from a blood transfusion) in 1997. (IP0033).[4]

---

[4] Defendants have submitted their exhibits in Bates stamp format. The exhibits have been electronically docketed as follows: exhibit C(1), pages 0001-0050; exhibit C(2), pages 0051-0100; exhibit C(3) pages 0101-0150, exhibit C(4), pages 0151-0199; exhibit C(5), pages 0200-0250; and exhibit C(6), pages 0251-0283. For the sake of simplicity, the court adopts the form of reference used by the defendants. These documents

*Case No: 3:05cv13/LAC/MD*

Plaintiff worked with these conditions until December 4, 2003, when IP granted his request for medical leave and SCP benefits based on a form completed by his treating physical, Dr. Robert Flurry, indicating that plaintiff had "markedly elevated blood pressure and poorly controlled diabetes." (IP0108-0110). Dr. Flurry requested that plaintiff do no work until his reevaluation on February 4, 2004. (IP0109).

Plaintiff received benefits under the SCP from December 4, 2003 through March 17, 2004. (IP0003, IP0017). Benefits were denied thereafter and on appeal by the claims administrator, defendant Wausau, and the plan administrator, IP, based on plaintiff's file and reviews from three independent physician reviewers, each of whom concluded that plaintiff was not disabled from his sedentary job. (IP0003-0005). Wausau also denied plaintiff's claim for LTD benefits, basing the denial on the facts underlying the discontinuation of the SCP benefits, that plaintiff had not been found to be totally disabled from his own occupation. (IP0250). Defendants state that plaintiff did not appeal the denial of his LTD benefits.

A form filled out by IP's human resources department indicates that the plaintiff's position with the company was eliminated due to downsizing, and he was to be separated from the company on December 31, 2003. (IP0111). He took his short term disability leave before this, and would have been separated from the company when his leave expired. (IP0111).

Details of the Plans

IP offers eligible employees benefits through the SCP and the LTD plans. (IP0284-0304). The SCP is sponsored by the company, and is not a welfare plan subject to the Employee Retirement Income Security Act of 1974 (ERISA). (IP0005, IP0298). It provides wage benefits to eligible employees for up to twenty-two (22) weeks, with the quantity of benefits received dependent upon the employee's salary and length of service with the company. (IP0294-IP0295, IP0304). The LTD Plan provides continuing wage benefits to

---

encompass applicable plan documents and the administrative record relied upon by the Plan Administrator.

*Case No: 3:05cv13/LAC/MD*

eligible employees who became disabled prior to age sixty and who have exhausted SCP benefits, until age sixty-five. (IP0296, IP0298).

In order to receive SCP benefits, an employee must be unable, because of injury or illness, to perform his or her job and must be under the regular care of a licensed physician or licensed chiropractor. (IP0294). Eligibility under the LTD plan requires that an employee be "totally disabled for the maximum duration of [your] Salary Continuance benefits." (IP0295). Furthermore, during the first 24 months an employee receives LTD benefits, he is considered disabled if he is unable to perform the duties of his job and under the care of a licensed physician, while after that time he is only considered disabled if he is incapable of performing <u>any</u> occupation or employment for which he might be qualified. (IP0295).

If an employee applies for benefits[5] and is denied, there is a general appeals procedure set forth in IP's SCP and the Summary Plan Description for the Long Term Disability Plan. (IP0286-0287). Employees must request a review of the denial to Wausau within 180 days following written receipt of the notice of denial, and failure to file this request for review constitutes waiver of the right to have the denial of the claim reviewed. (IP0286). After appeal, the employee may appeal to the plan administrator. (IP0288). The SCP and the Summary Plan Description for the Long Term Disability Plan further states that "[t]he Plan waives any right to assert that you have failed to exhaust administrative remedies because you do not elect to submit your benefit dispute for review under the voluntary appeal procedures." (IP0288). A separate document describing the LTD plan (doc. 25, exh. B) reflects that "[b]efore pursuing a legal remedy, a claimant shall first exhaust all claims review, and appeals procedures required under the Plan." (IP0323). As noted above, the SCP is not an ERISA plan, while the LTD plan is.

---

5 <u>The affidavit of Melissa Hartfiel states that the LTD Plan requires that a claimant appeal an unfavorable decision to Wausau and that if the claimant receives another unfavorable decision s/he may appeal to the Plan Administrator first, or directly file suit under ERISA. (Doc. 26, ¶ 9). The documents cited by the defendants in their memorandum do not specifically distinguish between an appeals procedure for denials under the SCP or LTD plan. And, the deadline for appeals under the LTD plan is specified elsewhere in the record as 60 days. (IP0323). This discrepancy is immaterial to the court's consideration of this case.</u>

Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); see also *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. See *id*.; see also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. See *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir. 1983). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

Plaintiff's claim for benefits under the Salary Continuance Plan

Defendants claim that they are entitled to summary judgment on plaintiff's claim for benefits under the Salary Continuance Plan because the denial of benefits was well-supported. Three independent medical examiners determined that plaintiff was not disabled after reviewing the plaintiff's medical records, the opinions of earlier examiners, and consulting with plaintiff's treating physician.

Defendants claim that regardless of the standard of review applied, *de novo* or arbitrary and capricious, plaintiff's claim for salary continuance benefits was properly denied. Defendants do not point to any portion of the record that would suggest which standard of review applies to district court review of appeals under the SCP. With respect to the LTD plan, the summary plan description provides in pertinent part that:

> [T]he plan administrator has discretion to interpret and administer the provisions of the Plan and to decide any claims or disputes that may arise under the Plan. The decision of the plan administrator with respect to any such matters shall be final and binding on both the company and the members of the Plan.

(IP0299.) In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57, 103 S.Ct. 80 (1989), the Supreme Court held that a denial of ERISA benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If a plan confers discretionary authority to determine eligibility and to construe the plan's terms, the arbitrary and capricious standard of review applies. *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1450 (11th Cir. 1997) (citations omitted). Clearly, then, the arbitrary and capricious standard of review applies to denials under the LTD plan. Although it is not an ERISA plan, the court will apply the same standard to the SCP.

A review of the entire record convinces the court that the denial of benefits under the SCP cannot be classified as arbitrary and capricious. Plaintiff received Salary Continuance Benefits from December 4, 2003 through March 17, 2004. Defendants discontinued these benefits and denied plaintiff's subsequent appeals based on the findings and reports of three independent medical reviewers that plaintiff was able to

perform his job with minor accommodations. (IP0152-IP0153, IP0124-IP0127, IP0026-IP0032).

Plaintiff's benefits were discontinued after his medical file and job description were examined by independent reviewer Dr. Jacqueline Hess, who also talked with plaintiff's treating physician, Dr. Robert Flurry. (IP0144). Dr. Hess issued a report on April 19, 2004 finding in pertinent part that plaintiff was not unable to perform his job as of the alleged onset of disability and that no work restrictions were recommended based on the job description provided.[6] (IP0152-IP0153). In reaching this conclusion she noted that:

> the patient's job is sedentary/office work, his blood pressure is only moderately elevated, and there is no evidence that his blood pressure was in any way modified by [being on] disability. Therefore there is nothing which supports his begin disabled from work.

(IP0152-IP0153). Plaintiff was notified that his SCP benefits were discontinued based on Dr. Hess's review via letter dated April 30, 2004. (IP0144). Although Dr. Hess had determined that plaintiff was not disabled from his job at any point, the benefits were discontinued effective March 18, 2004.

Plaintiff appealed this decision, citing his uncontrolled hypertension, diabetes and HIV/Aids. (IP0140). He attached his attending physician's statement and a medication list. (IP0141-IP0143).

The second outside independent review was conducted by Dr. Herbert Kleinman. (IP0096-IP0099).[7] Dr. Kleinman reviewed plaintiff's medical records and also discussed plaintiff's condition with Dr. Flurry. Dr. Kleinman reached a conclusion that was only

---

[6] Precisely which job description was provided to the independent examiners is not clear from the record. Plaintiff contends for the first time in his reply that the Return to Work Capabilities Evaluation form in the record was filled out by an individual with limited knowledge of the day to day activities of a Maintenance Supervisor/Coordinator. (IP0259). Plaintiff appended a list of the roles and responsibilities of his former position to his reply, and states that in his condition, he cannot hold down a sedentary job, not to mention the job as a Maintenance Supervisor/Coordinator, but does not offer any explanation as to which of the duties he cannot perform and why. Also, while sympathetic to the plaintiff's condition, the court notes that plaintiff's capabilities today is not dispositive to the court's determination of whether plaintiff was entitled to disability Benefits under the plan in March of 2004.

[7] The same records are also contained at IP0124-IP0127.

*Case No: 3:05cv13/LAC/MD*

marginally different from that of Dr. Hess. In his report, Dr. Kleinman opined that the plaintiff's condition prevented him from performing the duties of his job starting on December 4, 2003, but only for a two week period, after which work restrictions would allow him to safely return to work. (IP096). The restrictions Dr. Kleinman identified were the provision of facilities to store medications and proper food for lunch and snack, the provision of facilities to allow plaintiff to check his blood glucose, and regular brief rest periods.[8] (IP096). Wausau denied plaintiff's appeal by letter dated June 9, 2004 based on Dr. Kleinman's review of the records. (IP0118-IP0119).

Plaintiff again appealed, explaining that he was having trouble controlling his blood sugar and blood pressure, and that the medications he was on affected his well being and frame of mind. (IP033). The third independent review was conducted by Dr. Herbert Lewis Malinoff. (IP0026-IP0032). After reviewing the entire file, including the reports of previous examiners, Dr. Malinoff concluded that there was no medical evidence in the records to support a finding that plaintiff was disabled from his sedentary position as Maintenance Supervisor, because his hypertension had not responded to either medication or time off from work. (IP031). He opined that plaintiff's only restriction would be to be allowed to check his glucose levels every three hours and have frequent rest periods available. (IP031-IP032). Therefore, plaintiff's appeal was again denied. (IP0003-IP0005).

Plaintiff 's treating physician, Dr. Robert Flurry, found that plaintiff should be out of work due to his diabetes and high blood pressure on December 4, 2003, and requested that he remain out of work until the follow-up evaluation scheduled for February 6, 2004. (IP0109). On February 23, 2004, Dr. Flurry filled out a form indicating that plaintiff was "unable to work due to increase (sic) risk with high BP and blood Sugars," (IP0163) and on May 6, 2004, he indicated that plaintiff was "incapable of sedentary work." (IP0141). Each of the three independent medical reviewers either spoke with Dr. Flurry or reviewed his records and notes before disagreeing with his findings. Unlike in Social Security disability

---

[8] Defendants note that it is their policy to accommodate such reasonable restrictions, but that in the plaintiff's case this is moot because his position was eliminated during a reduction in force effective December 31, 2003 before the restrictions were identified. (IP0111).

*Case No: 3:05cv13/LAC/MD*

claims, plan administrators in ERISA actions are not obliged to accord special deference to the opinions of treating physicians over other evidence relevant to the claimant's medical condition. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 1967 155 L.Ed.2d 1034 (2003). Furthermore, it is clear from the record that plaintiff had been performing his duties without restrictions for several years after his diagnoses of diabetes, hypertension and HIV, and that neither time off of work nor medication changes appeared to affect plaintiff's hereditary hypertension. See, *Thomas v. Lockheed Martin Information Systems*, 155 F.Supp.2d 1316, 1319-1323 (N.D. Fla. 2001) (denying claim for STD benefits because plaintiff had been working with the underlying condition for some time and independent medical reviewers could not support conclusion of treating physicians that plaintiff was disabled at the time he submitted a claim for benefits); *cf. Duckett v. Blue Cross and Blue Shield of Alabama*, 123 F.Supp.2d 1286, 1297-98 (M.D. Ala. 2000) (denial of benefits was not arbitrary and capricious where medical evidence and documentation was reviewed by an in-house physician and two independent reviewers all of whom reached a conclusion different than the claimant's treating physician, but had "rational" explanations for their contrary conclusions.) Plaintiff's claim that he was "relieved from work due to [his] medical conditions in 2002" is unsubstantiated, as clearly he had continued to work.[9] Therefore, the court cannot find that the defendants' decision to discontinue plaintiff's SCP benefits was arbitrary and capricious as a matter of law, and defendants are entitled to summary judgment on this claim.

Plaintiff's claim for benefits under the Long Term Disability plan

Defendants claim that they are entitled to summary judgment on plaintiff's claim for benefits under the LTD for several reasons. First, they contend that the plaintiff was never entitled to such benefits because he did not exhaust his benefits under the SCP, as required under the plan. (IP0295). SCP benefits are payable for a period up to 22 weeks.

---

[9] There is a progress note from October 25, 2002 noting that plaintiff suffered from uncontrolled and probably most essential hypertension as he does have very strong family history of hypertension. (IP0070). Nothing in this note, or other notes from that year mentions that plaintiff should be excused from work. (IP0043)

(IP0304). Plaintiff began receiving SCP benefits on December 4, 2003. Exhaustion of these benefits would have required that he receive them continuously for a period of twenty-two weeks ending on May 6, 2004. Plaintiff's benefits were discontinued on Marhc 17, 2004, well before the end of the twenty-two week period. Therefore, he failed to meet a condition precedent to obtaining LTD benefits.

Defendants also claim plaintiff failed to exhaust his administrative remedies on the LTD plan before filing this case, as required by Eleventh Circuit law. Plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. *Counts v. American Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) *(citing Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985)). However, district courts have discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate. *Counts*, 111 F.3d at 108 (citing *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990)). There is nothing in the record to suggest that this would be the situation in this case. Exhaustion of plaintiff's appeal rights would have required a single mandatory appeal, with the option of a voluntary appeal to the plan administrator. (IP0285-IP0288). As noted by the defendants, plaintiff appealed the denial of SCP benefits, but never appealed the denial of LTD benefits, even though the letter of denial provided him with the address to where he should direct an appeal and informed him that he could file suit in federal court after exhausting the "mandatory appeal levels that are described in your benefit booklet." (IP0251; doc. 26 ¶ 10).

Furthermore, any attempt to appeal at this point to correct the deficiency would be futile, as the SPD provides that appeals must be filed within 180 days of the notice of denial. (IP0250, IP0286). *Cf. Northlake Regional Medical Ctr. v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301, 1302 (11th Cir. 1998) (dismissing claim as time barred when plaintiff failed to file suit within the 90 day period provided in the plan); *Gayle v. United Parcel Service, Inc.*, 401 F.3d 222, 229-30 (4th Cir. 2005) (dismissing with

prejudice, rather than remanding to Plan Administrator, where plaintiff failed to exhaust administrative remedies and was time-barred from pursuing exhaustion by the time of suit).

Therefore, for any of the foregoing reasons, defendants are entitled to summary judgment on the plaintiff's claim for LTD benefits.

Accordingly, it is respectfully RECOMMENDED:

Defendants' motion for summary judgment (doc. 25) be GRANTED, and the clerk be directed to enter judgment in favor of the defendants and to close the file.

DONE AND ORDERED this 27th day of October, 2005.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:05cv13/LAC/MD*